UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOBIN, CARBERRY, O'MALLEY, : | |
| RILEY & SELINGER, P.C., : | |
|     Plaintiff : | |
| : | |
| v. : | Case No. 3:04 CV 1926 (CFD) |
| : | |
| RALPH P. DUPONT, : | |
|     Defendant. : | |

**RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION**

The law firm of Tobin, Carberry, O'Malley, Riley & Selinger, P.C. ("TCORS") brought suit against its former law partner Ralph P. Dupont in the Connecticut Superior Court, alleging that Dupont had breached his termination of employment agreement with TCORS and seeking an order directing Dupont to proceed with arbitration under the terms of that agreement. Dupont then removed the action to this Court, pursuant to 28 U.S.C. § 1441.[1] On March 24, 2006, the Court granted TCORS' motion for an order compelling arbitration under 9 U.S.C. § 4. See Doc. # 37. The defendant has moved for reconsideration of that decision.[2] The Court heard argument on the motion for reconsideration on May 4, 2006, and upon de novo review and for the reasons

---

[1] Dupont claimed in his notice of removal that this Court possessed subject matter jurisdiction under 28 U.S.C. § 1331, the federal question provision. It appears that the Court's subject matter jurisdiction instead properly rests on the diversity jurisdiction provisions of 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 in value and the parties are citizens of Connecticut and Hawaii, respectively. See Doc. #1.

[2] In its initial ruling, the Court indicated that it would reconsider its ruling on the motion to compel arbitration de novo, as statements in the defendant's papers responding to that initial motion suggested that he felt precluded by the scheduling order in this case from filing a substantive response. See Doc. # 37 at 4. The defendant filed a substantive memorandum regarding the arbitrability of this dispute as part of his motion for reconsideration, as well as a reply brief to plaintiff's objection to that motion. See Docs. #38, 48.

1

below, the defendant's motion is denied.

**I.      Background[3]**

Dupont was a partner in TCORS' predecessor law firm of Dupont, Tobin, Levin, Carberry, & O'Malley, P.C., located in New London, Connecticut, until July 1, 1989.[4]  On January 20, 1990, Dupont and his former firm memorialized their mutual agreement to end Dupont's partnership in a written Termination of Employment Agreement.[5]  See Doc. #1 at Exh. A.  Among other provisions, the termination agreement stated that Dupont was entitled to some portion of the legal fees subsequently received by the firm on two matters that he had staffed during his period of employment.  According to the agreement, any such monies would only be payable to Dupont to the extent that the fees received exceeded the "cost advances, disbursements, time-work and counsel fees" accrued by TCORS on those matters.  Id at ¶ 3.

The matters covered by this profit-sharing provision of the termination agreement were "two certain matters involving claims by the Estates of William Stanford and Charles Hegna against Kuwait Airways and others for the wrongful death and injury of said decedents. . . ."  Id.  TCORS claims that after his disassociation with the firm, Dupont won a default judgment from the Islamic Republic of Iran for the Estate of Charles Hegna[6]; that this judgment should be

---

[3] These facts are taken from the plaintiff's complaint and the exhibits attached thereto.

[4] To diminish confusion, the abbreviation "TCORS" will be used to refer to the plaintiff law firm both in its current incarnation and as it was previously organized.

[5] Though the termination of employment agreement was not signed until January 20, 1990, its provisions explicitly were made retroactive to July 1, 1989, the last day of Dupont's employment.

[6] The Estate's later success apparently stemmed from a provision of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, which amended the Foreign Sovereign

considered the conclusion of a matter "that originated while [Dupont] was a member of [TCORS]"; and that pursuant to the Hegna family's original contingent fee agreement with TCORS and Dupont's termination agreement, TCORS is entitled to $321,940 in fees and $103,741 in costs.  See Complaint at ¶ 5.

## II.	Discussion

The termination agreement between Dupont and his former law firm explicitly states that disputes between the parties are to arbitrated: "Any controversy or claim arising out of, or relating to any provisions of this Termination Agreement or the Contract terminated by this Agreement, shall be settled by arbitration according to the rules then in effect of the American Arbitration Association, to the extent consistent with the laws of the State of Connecticut."  Doc. #1 at Exh, A, ¶ 10.

Despite this clause, the defendant argues that the present dispute is not arbitrable.  Dupont claims that the fees sought by the plaintiff do not stem from the original Hegna lawsuit contemplated by the termination agreement but rather an independent subsequent litigation.  Dupont's argument, however, reflects the parties' disagreement regarding "the *merits* of the dispute," while the Court here must evaluate their independent disagreement "about the *arbitrability* of the dispute."  First Options of Chicago, Inc., v. Kaplan, 514 U.S. 938, 942 (1995) (emphasis original).

---

Immunities Act to revoke the sovereign immunity of nations found to sponsor terrorism.  See 28 U.S.C. § 1605(a)(7).  The Hegnas alleged that Iran had provided support to the terrorist organization Hezbollah, some of whose members had hijacked the Kuwait Airlines flight aboard which Charles Hegna was killed.  See generally Doc. #38 at 5-9.  The Hegnas have recovered more than $8 million from the United States government out of funds seized from Iran.  See Hegna v. Islamic Republic of Iran, 402 F.3d 97, 99 (2d Cir. 2005).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs v. Communications Workers of America, 475 U.S. 643, 649 (1986).  In determining whether a particular dispute is arbitrable, courts are guided by the Federal Arbitration Act, "a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  The Federal Arbitration Act establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 25.  The Second Circuit has interpreted the Act to mean that "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, the dispute should be submitted to arbitration." Concourse Village, Inc. v. Local 32E, Serv. Employees Int'l Union, 822 F.2d 302, 304 (2d Cir. 1987).  Furthermore, a court making such a determination of arbitrability "is not to rule on the potential merits of the underlying claims." AT&T Techs., 475 U.S. at 649; see also Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960) (evaluating issues of arbitrability pursuant to a collective bargaining agreement and holding that "the courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.  The agreement is to submit all grievances to arbitration. . . .")

Here, the parties agreed to a broad clause requiring arbitration of "any controversy or claim arising out of or relating to" the provisions of the termination agreement.  The Court finds this arbitration agreement valid and enforceable.  Furthermore, the current fee dispute over the Hegna litigation, whatever the merits of Dupont's underlying defenses to the plaintiff's

4

allegations, clearly "relates to" the original termination agreement.[7]  Therefore, the dispute is subject to arbitration under the terms of that agreement.

**III.     Conclusion**

The Defendant's Motion for Reconsideration [Doc. #38] is DENIED.  Pursuant to 9 U.S.C. § 4, the parties are ORDERED to submit this claim to arbitration, in accordance with their arbitration agreement.  The case is STAYED pending arbitration.

So ordered this _12th_ day of May 2006 at Hartford, Connecticut.

        ___/s/ CFD_____
        **CHRISTOPHER F. DRONEY**
        **UNITED STATES DISTRICT JUDGE**

---

[7] Indeed, the termination agreement applied to all of Dupont's "work in process" at the time he left TCORS.  Doc. 1 at Exh. A, pg. 2.  The Court's conclusion that this dispute relates to the provisions of the agreement and is therefore arbitrable is only strengthened by the agreement's <u>additional</u> explicit statement that "matters involving claims by the Estates of William Stanford and Charles Hegna" fell within its purview.  <u>Id</u>. at 3.